UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| TYLER BAKER, individually, and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>    v.<br><br>REPP SPORTS LLC, a Florida company<br><br>               Defendant. | NO. 6:21-cv-00242-CEM-LRH<br><br>**FIRST AMENDED<br>CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Tyler Baker ("Plaintiff" or "Baker") brings this Class Action Complaint and Demand for Jury Trial against Defendant Repp Sports LLC ("Defendant" or "Repp Sports") to stop the Defendant from violating the Telephone Consumer Protection Act by sending unsolicited telemarketing text messages to consumers who registered their phone numbers on the National Do Not Call registry ("DNC") and who expressly requested that the text messages stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Baker, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.    Plaintiff Tyler Baker is a resident of Underhill, Vermont.

2.    Defendant Repp Sports is a Florida registered company headquartered in Longwood, Florida. Defendant Repp Sports conducts business throughout this District, Florida, and the United States.

## JURISDICTION AND VENUE

3.    This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.      This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant resides in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

5.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.      The National Do Not Call Registry provides for consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).

7.      A listing on the DNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9.      By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12.     According to online robocall tracking service "YouMail," 3.9 billion robocalls were placed in December 2020 alone, at a rate of 124.8 million per day. www.robocallindex.com (last visited Jan. 18, 2021).

13.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

16.     Repp Sports manufactures and sells weight loss and energy products to consumers, including Raze Energy, an energy performance enhancement drink.[3]

17.     Repp Sports is owned and operated by MacroCap Labs.[4]

18.     As part of its business practice, Repp Sports places solicitation text messages to consumers in order to solicit them to purchase Defendant's products.

19.     Unfortunately, these text messages are being sent to consumers who do not have an existing business relationship with Defendant without their express written consent even though they have registered their phone numbers on the DNC.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://reppsports.com/product/raze-energy/
[4] https://www.linkedin.com/in/chris-wagner-9a3a133a/

20.     Furthermore, Defendant lacks sufficient policies and procedures for maintaining an internal do not call list that results in the Defendant continuing to send text messages to consumers who have requested that Defendant stop text messaging them.

21.     For example, in Plaintiff Baker's case, Defendant sent an unsolicited text messages to his phone number registered on the DNC, despite him never giving Defendant his express written consent to receive such text messages and requesting that Defendant stop texting his cell phone.

22.     In response to these text messages, Plaintiff Baker files this lawsuit seeking monetary and injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

**REPP SPORTS TRICKS CONSUMERS TO PROVIDE THEIR CELL PHONE NUMBERS SO THAT REPP SPORTS CAN SEND THEM UNSOLICITED TEXT MESSAGES**

23.     Defendant Repp Sports promotes its products through free giveaways and other promotional incentives.

24.     For example, Repp Sports offers a free Raze Energy sample pack for which the consumer is required only to pay for the shipping.[5]



25.     The consumer is taken to a webpage where they are first asked to fill in their "shipping information" on a form and the price advertised on the website is scratched off from $10.00 to "FREE" along with the fact that the shipping & handling cost will be "Calculated at the next step."



26.     A consumer will then fill out the "Shipping" section as the form is a 2-step process "Shipping" and "Billing." The consumer fills out his email, name, phone number, and

---

[6] https://reppsports.com/checkout-raze-energy-sample-giveaway/

address, as part of the shipping section and finally clicks "Go to Step #2" to be presented with the pricing of the shipping and handling and to pay for the order.

27.     Whether or not a consumer completes Step #2 and provides Repp Sports their credit card, Repp Sports has captured the consumer's name, email, address, and phone number and then sends them solicitation text messages whether the consumer consented to them or not.

28.     While Repp Sports will claim that any consumer who filled out the first step of the form (and who did not complete the second step of the form) consented to receive these text messages, they would be wrong. Repp Sports did not obtain prior express written consent that was presented to the consumers in a clear, conspicuous, and unambiguous manner.

29.     First, the consent language itself is presented *below* the button of "Go to Step #2" and is questionable whether a consumer will even see it. The consent language itself is also presented over a dark-grey background making the consent language inconspicuous compared to the rest of the page.



30.     Second, the TCPA requires that companies not condition consent as a requirement to transact. Repp Sports is clearly aware of this requirement as it copies the boilerplate consent

---

[7] *Id.*

language in their consent language below the button "I consent to receive from REPP Sports emails, call, and SMS text messages at any time…I understand that consent is not a condition of purchase…" However, a consumer cannot complete this form or this transaction without providing their phone number.

31.     If a consumer tries to submit the form without providing their phone number, the box around "Phone" turns red and the form cannot be submitted and the top of the form states "Phone is a required field." Repp Sports clearly conditioned their consent as a condition of purchase.



---

32.     Third, the button "Go to Step #2" is misleading as what Repp Sports is really doing is claiming the consumer consented when they press that "Go to Step #2," even if the consumer does not complete the rest of form like the Plaintiff did.

33.     Fourth, Repp Sports fraudulently induces the consumer to click on "Go to Step #2" (and thereby 'consenting' to the receive text messages). The consumer must click on "GO TO STEP #2" in order to see the calculated "shipping & handling price" as part of the Free Raze Energy Sample Pack that Repp Sports indicates will be "Calculated at next step."



34.     When the consumer does click on the "GO TO STEP #2" button they are *never presented* with a "shipping & handling price" on the next step of the form, rather the consumer is presented with a $9.95 Raze Energy Sample Pack and additional add-ons to the order such as ordering 24 to 48 cans as seen below.



35.     In essence, Defendant fraudulently induced Plaintiff's consent by advertising a FREE Raze Energy Sample Pack and just pay for shipping. In order for the Plaintiff to uncover the shipping expense he had to agree to vague and intentionally hidden terms that when he eventually moved to the next step was never presented with the "shipping & handling" expense and the sample pack was not free. (In fact, Repp Sports regularly sells their Raze Energy 12 pack for $29.99 which comes out to around $2.50 per can. The free 4-sample pack of $9.95 is essentially the same price and is not free.)

36.     Consumers have complained online about unexpected text messages that they received from Defendant including text messages after expressly opting out, like the Plaintiff:

 T

⭐☆☆☆☆ **Yuck!!**
Reviewed in the United States on 25 October 2020
**Verified Purchase**
Terrible taste unless you like a diet soda. It might taste good if you add a water enhancer.

Repp sports will spam you if they get your phone number or email address. I got 8 text messages in 7 days and 14 emails in 7 days.                    9

Stephen Bartholomew 🔲 doesn't recommend **RAZE Energy - by REPP Sports**.
November 27, 2020 · 🌐                                          ...

I cannot get these lunatics to leave me alone. I bought some their poison garbage drinks to help out a friend that was part of their pyramid scheme and now I cant get them to leave my alone. I have unsubscribed from every form of communication they use and I still keep receiving text messages. I have given away all the crap i bought to random people and so far everyone has agreed the drinks are terrible. Leave me alone!                           10

---

9

https://www.amazon.com/gp/aw/reviews/B07GVRS351/ref=cm_cr_arp_d_viewopt_kywd?pageNumber=1&filterByKeyword=text
[10] https://www.facebook.com/razeenergy/reviews/

Tom Janikowski
**Shaun Ziemann** the product is ok at best. I get email and text spam everyday from those bastards. They are now blocked. I'd never buy this product again.

Like · Reply · 10w                                    11

## PLAINTIFF BAKER'S ALLEGATIONS

37.     Plaintiff Baker registered his phone number on the DNC on November 4, 2004.

38.     Plaintiff Baker's phone number is not associated with a business and is used for personal use only.

39.     In March of 2020, Plaintiff Baker received an unsolicited email from Defendant to his email address.

40.     Up to that point of time, Plaintiff had never provided Defendant with any of his contact information.

41.     The unsolicited email came into Plaintiff's email spam folder.

42.     Plaintiff viewed the email and clicked on the link in the email to find out about getting free samples of Raze Energy.

43.     In order to find out how much the shipping would cost to get the *free* samples of Raze Energy, Plaintiff Baker provided his shipping information including his name, address, and phone number as part of the two-step process.

44.     When Plaintiff Baker proceeded to the 2nd part of the form that asks for his billing information, Plaintiff noticed that Repp Sports would be charging him the full-price for a pack of Raze Energy drinks of $9.95. The Plaintiff was confused because the advertisement was for a *free* 4-pack sample and Defendant was now charging for the pack and never presented the shipping and handling price.

---

[11] https://www.facebook.com/razeenergy/posts/197431005114729

45.     Unwilling to proceed, Plaintiff did not provide his credit card informatino on the Repp Sports website and quit out the Repp Sports website altogether, unaware that Repp Sports would use the information he provided in Step-1 to send him repeated text messages.

46.     Plaintiff never entered into an established business relationship with Repp Sports since he never transacted with Repp Sports and any supposed consent was procured through fraud or trickery.

47.     Plaintiff received a text message from Defendant on March 30, 2020 at 8:33 AM from phone number 727-205-9892 encouraging him to purchase Raze Energy products:



48.     On April 1, 2020 at 8:37 AM, Plaintiff received another solicitation text message from Defendant using phone number 727-205-9892:



49.     After receiving the text messages and email messages from Defendant, Plaintiff unsubscribed from the emails.

50.     Even if one could argue that Plaintiff inquired about Defendant's goods or services (which he did not since he did not complete the form), no EBR existed since his inquiry ended at least 3 months from the time he visited Defendant's website.

51.     Despite this fact, more than 8 months after Plaintiff provided his shipping information to Rep Sports, Plaintiff received an unsolicited text message from Defendant in December, 2020 at 3:49 PM to his cell phone using shortcode 29419.

52.     Plaintiff then received a second unsolicited text message from Defendant to his cell phone, again using shortcode 29419 on December 10, 2020 at 4:33 PM:



53.    As per the above image, Plaintiff texted "Stop!" to 29419 on December 14, 2020 at 1:52 PM.

54.    Despite his clear opt-out request, Plaintiff received an additional unsolicited text message from Defendant on December 30, 2020, again using shortcode 29419:



55.    The two December text messages were telemarketing because they were for the purpose of soliciting Plaintiff's purchase of Defendant's products.

14

56.     Plaintiff never knowingly provided Defendant with consent to send him unsolicited text messages or calls to his cell phone.

57.     Plaintiff received more than three unsolicited text messages, despite having no established business relationship with Defendant.

58.     In addition, Defendant failed to stop texting the Plaintiff after Plaintiff opted-out from the second unsolicited text message that he received.

59.     The unauthorized solicitation text messages that Plaintiff received from Repp Sports, as alleged herein, have harmed Plaintiff Baker in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

60.     Seeking redress for these injuries, Plaintiff Baker, on behalf of himself and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited telemarketing text messages to cellular telephones that are registered on the DNC and otherwise prohibits companies from sending any telemarketing text messages if they fail to implement adequate policies and procedures for maintaining an internal do not call list.

## CLASS ALLEGATIONS

61.     Plaintiff Baker brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**<u>Do Not Call Registry Class:</u>** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of the Defendant) texted more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted Plaintiff, and (5) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to text Plaintiff, or (b) they obtained the person's number in the same manner as Defendant claims they obtained Plaintiff's number.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of Defendant) texted more than one time (2) within any 12-month period (3) for substantially the same reason Defendant texted Plaintiff (4) including at least once after the person requested that Defendant stop texting them.

62.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Baker anticipates the need to amend the Class definitions following appropriate discovery.

63.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

64.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     whether Defendant Repp Sports systematically sent multiple text messages to Plaintiff and other consumers whose telephone numbers were registered with the DNC without first obtaining clear and conspicuous consent to send the text messages;

(b)     whether Defendant Repp Sports induced fraudulently induced consent from consumers;

(c)     whether Defendant Repp Sports's text messages to Plaintiff and other consumers were sent for telemarketing purposes;

16

(d)     whether Defendant Repp Sports sent telemarketing text messages to consumers after being instructed to stop texting;

(d)     whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(e)     whether Defendant's conduct constitutes a violation of the TCPA;

(f)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

65.     **Adequate Representation**: Plaintiff Baker will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Baker has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff Baker and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Baker nor his counsel have any interest adverse to the Classes.

66.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Baker. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

17

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Registry Class)**

67.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

68.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

69.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

70.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

71.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

72.     As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

73.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages

18

recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Internal Do Not Registry Class)**

74.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 66 as if fully set forth herein.

75.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

76.    Defendant or their agents sent marketing text messages to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be texted by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/texts.

77.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

78.    Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Baker individually and on behalf of the Classes, prays for the following relief:

79.    An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Baker as the representative of the Classes; and appointing his attorneys as Class Counsel;

80.    An award of actual and/or statutory damages and costs;

81.    An order declaring that Defendant's actions, as set out above, violate the TCPA;

82.    An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Classes; and

83.    Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Baker requests a jury trial.

DATED this 27th day of April, 2021.

**TYLER BAKER**, individually and on behalf of all others similarly situated,

/s/ Avi R. Kaufman
Avi R. Kaufman (Trial Counsel)
Florida State Bar # 84382
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Stefan Coleman
Florida State Bar # 30188
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Attorneys for Plaintiff and the putative Classes*

21

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 27, 2021, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF, and it is being served this day on all

counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.


*/s/ Avi R. Kaufman*

22